IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| WANNA CHOI, an individual, | ) | No. 71166-1-I |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ASHLEY YOUNG, an individual, | ) | |
| | ) | |
| Respondent. | ) | FILED: December 29, 2014 |

SCHINDLER, J. — Wanna Choi appeals the order granting the motion to vacate entry of an ex parte default judgment. Choi argues the court erred in finding the defendant Ashley Young was entitled to notice of the motion for entry of a default judgment under CR 55. Choi also argues the court erred in finding that Young presented a prima facie defense and demonstrated excusable neglect and reasonable diligence under CR 60(b). We affirm.

## FACTS

Wanna Choi and Ashley Young were involved in a rear end car accident on March 25, 2010. Young's insurance carrier United Services Automobile Association General Indemnity Company (USAA) paid for the repairs to Choi's vehicle.

In 2012, Choi's attorney submitted a claim to USAA. On November 6, a USAA claims adjuster sent a letter acknowledging receipt of the claim and requesting the attorney to "[p]lease advise of the demand status."

On March 22, 2013, Choi electronically filed (e-filed) a summons and a complaint for damages against Young with the King County Superior Court Clerk. Choi alleged that on March 25, 2010 while she was stopped in traffic on Interstate 5, Young's car hit her from behind, "pushing her forward into the vehicle in front of her." Choi requested an award of damages for medical expenses, lost wages, diminution in value of her vehicle, and pain and suffering "in amounts to be established at trial."

On March 26, Choi's attorney sent a facsimile to USAA claims adjuster Wade Langston with a "courtesy copy" of the summons and complaint. The attorney asked Langston to call if "interested in making a settlement offer to my client in an attempt to resolve this matter." Langston called immediately to discuss settlement. After the call, the attorney sent Langston a letter dated March 26 agreeing to not serve Young for 30 days and "to notify you prior to service of process upon Ms. Young." The letter states:

> Dear Mr. Langston:
>
> This is in response to our telephone conversation of [March 26, 2013]. We are willing to forego service of process on your insured, Ashley Young, for a period of thirty (30) days to try to resolve Ms. Choi's claim through settlement negotiations. <u>We agree to notify you prior to service of process upon Ms. Young</u>.
>
> I look forward to working with you on this matter.[1]

On May 2, Langston sent a letter to Choi's attorney requesting documentation of the work loss claim, including "[i]ncome tax records for the years 2009 - 2012."

---

[1] Emphasis added.

2

Langston requested Choi submit a counteroffer "so we may continue to move this claim forward to an amicable settlement."[2]

In a letter dated May 17, Choi's attorney provided copies of tax returns for 2010 and 2011. The letter states that Choi "rejects your settlement offer" and "[u]nless we can resolve this claim quickly, we will serve your insured with the Summons and Complaint."

Without notice to USAA, Choi's attorney directed service of process of the summons and complaint. On June 4, Choi filed a "Declaration of Service of: SUMMONS ON COMPLAINT FOR DAMAGES; COMPLAINT FOR DAMAGES." The Declaration of Service states that on May 30, the process server delivered the summons and complaint at 7:46 p.m. to "750 N 143RD ST UNIT 108 SEATTLE" on "ASHLEY YOUNG A brown-haired white female [approximately] 18-25 years of age, 5'-5'4" tall and weighing 120-160 [pounds]."

Without notice to USAA, on June 27, Choi obtained an ex parte order of default against Young. The order of default states that Choi properly served Young and Young had not timely filed an answer. The order of default specifically states that the ex parte commissioner considered "Plaintiff's Amended Motion," the amended declaration of Choi's attorney in support of the motion for an order of default, and "the exhibits

---

[2] The letter states, in pertinent part:

This is a follow up to our conversations regarding the work loss claim for your client, Wanna Choy [sic].

We are requesting additional documentation for the lost wages as noted below:

-Income tax records for the years 2009 - 2012
-[V]erification of time missed from work from every employer, to include confirmation that work was available . . . .

USAA would like to continue negotiations regarding the settlement for your client[']s Bodily Injury claim against our insured. We have extended a fair offer based on the medical treatment received from this loss. Please contact USAA to present your counter offer so we may continue to move this claim forward to an amicable settlement.

attached thereto." The undisputed record shows Choi did not file "Plaintiff's Amended Motion for Order of Default against Defendant," the amended declaration of Choi's attorney, or the exhibits with the King County Superior Court Clerk until more than six months later on January 10, 2014.

On June 28, 2013, Langston sent another settlement offer to Choi's attorney. In a letter dated July 11, Choi's attorney rejected the settlement offer, made a counteroffer, and for the first time informed Langston that Young had been served with the summons and complaint on May 30. The letter makes no mention of the June 27 order of default but states that "[u]nless the parties can reach a settlement of this claim by [July] 19, 2013, Ms. Choi will pursue all her legal remedies against your insured." The July 11 letter states, in pertinent part:

> Ms. Choi has authorized us to make a counter demand of $40,000, which would include a complete release of your insured and USAA General Indemnity Company from any claims involving the March 25, 2010 motor vehicle accident.
>
> As you are aware, the 90 day deadline for serving process on Ms. Ashley Young expired on June 19, 2013. Consequently, we served Ashley Young with the Summons and Complaint on May 30, 2013. Unless the parties can reach a settlement of this claim by June [sic] 19, 2013, Ms. Choi will pursue all her legal remedies against your insured.

At some point before July 16, Langston became aware of entry of the order of default against Young. On July 16, Langston asked Choi's attorney to agree to vacate the order of default. The attorney refused. That same day, the attorney representing USAA and Young contacted Choi's attorney to request a copy of the order of default and service of process. On July 17, the attorney filed a notice of appearance.

Without notice to USAA or Young's attorney, on July 30, Choi's attorney obtained an ex parte default judgment against Young in the amount of $134,744. The default

4

judgment and the "Order Granting Motion for Default Judgment" state that the ex parte commissioner considered "Plaintiff's Motion for Entry of Default Judgment," the declaration of Choi's attorney "and the exhibits attached," and the "Declaration of Wanna Choi and the exhibits attached." The Order Granting Motion for Default Judgment states Choi is entitled to lost wages in the amount of approximately $32,000, payment of medical bills in the amount of $1,822, and "an award of general damages for her pain and suffering in the amount of $100,000." The record shows the attorney filed Plaintiff's Motion for Entry of Default Judgment and the "Declaration of Wanna Choi in Support of Plaintiff's Motion for Entry of Default Judgment" with the ex parte department but did not file the motion or declaration with the King County Superior Court Clerk until January 10, 2014.

On September 12, 2013, Young filed "Defendant's Motion for an Order to Show Cause Why the Order of Default against Ashley Young Should Not Be Vacated." Young argued the court should vacate the order of default under CR 55 because she was not properly served with the summons and complaint. In support, Young submitted a declaration and the declaration of Lindsay Kester.

In her declaration, Young states she had "never been served with a copy of the Summons and Complaint." Young's declaration states, in pertinent part:

> I know that I have never been served with a copy of the Summons and Complaint in this lawsuit. In late May or early June of this year, I was in the process of moving from my apartment at 750 North 143rd Street, Unit 108, Seattle, Washington to my new residence in West Seattle. While I was loading up a truck on the street in front of my apartment, my friend, Linds[a]y Kester, was in the apartment helping me pack. . . .
> . . . When I reentered the apartment, Ms. Kester handed me some papers and said someone had come by the apartment and handed her the papers. At no time did I see or speak to any process server. I took the papers from Linds[a]y, glanced at them, did not understand what they

were about, and then set them on a counter in my apartment. I had no idea that the papers said anything about a lawsuit or that there was any deadline to do anything.

Kester states she recalled "a man approaching me as I was helping Ashley Young move." Kester states the man asked her whether "Ashley Young live[s] here," and after she said, "Yes, she does," the man "gave me some papers and told me something about giving them to an insurance company. I put them on a counter and later informed Ashley Young that I had received them."

In opposition to the motion to vacate the order of default, Choi argued Young did not present clear and convincing evidence to refute service of process, and "the appropriate standard is CR 60(b) which applies to a motion to vacate a default judgment," not CR 55. Choi asserted she had "no duty to notify the insurer of the details of the litigation, because the insurer is not a party to the suit," and Young did not present evidence of a prima facie defense, excusable neglect, or due diligence. Choi's attorney submitted a declaration with a copy of the summons and complaint filed on March 22, 2013, a copy of the motion for entry of default judgment, and the declaration of Choi in support of the motion for entry of a default judgment.

In reply, Young's attorney states he was retained to represent Young on July 16, 2013 and "immediately spoke with plaintiff's counsel, Eileen McKillop, on that same date, advising her of my appearance on behalf of defendant Ashley Young." The attorney explains that during the telephone conversation, Choi's attorney told him "no default judgment had been entered." The declaration states, in pertinent part:

> In that telephone conversation on July 16, 2013, Ms. McKillop confirmed that an order of default had been entered against the defendant, offered to provide me a copy of the order of default (and did so), refused to agree to set aside or vacate the order of default and, when I asked if a default

6

judgment had been entered, informed me that no default judgment had been entered.

. . . .

. . . Without any notice, written or otherwise, of plaintiff's motion for entry of a default judgment, plaintiff's default judgment has come as a surprise. Ms. McKillop never informed me of her intention to file a motion for the entry of a default judgment or provide me with any notice of the motion. Nor did she inform me that such a default judgment had been entered until I received Plaintiff's Opposition to Defendant's Motion to Show Cause Why Order of Default Should Not Be Vacated on September 18, 2013.

The attorney also states that if Choi had provided notice of the motion for entry of the default judgment, Young "would have opposed it with evidence of a prima facie defense on damages."[3] The ex parte commissioner transferred the motion to vacate the order of default to the assigned judge.

On September 19, Young filed an answer to the complaint for damages. Young admits liability but disputes the amount of damages. Specifically, Young admits that she was "following the plaintiff's vehicle too closely" and that Choi "sustained some personal injuries as a result of the accident," but denies "the nature and extent of the plaintiff's injuries and damages, as well as the proximate causation of those alleged injuries and damages." Young asserts a number of affirmative defenses, including lack of personal jurisdiction and insufficiency of service of process.

On October 8, Young filed a motion to vacate the order of default and the default judgment under CR 55 and CR 60(b). In addition to the previous declarations, Young

---

[3] In addition, the attorney asserts he acted with due diligence.

At that same time, I was recovering from two cancer surgeries that had taken place on May 23, 2013 and May 30, 2013 . . . .

. . . .

Under the above circumstances, in addition to the fact that my 90 year-old mother suffered a life-changing stroke on July 22, 2013, five days after plaintiff's counsel received my written notice of appearance, leaving her paralyzed, unable to speak or swallow properly and in need of 24/7 care, I believe that I have acted with a considerable amount of due diligence in moving to set aside the default.

7

submitted the declaration of Langston. Langston attaches a copy of the March 26, 2013 and May 17, 2013 letters from Choi's attorney to Langston, and the May 2, 2013 letter from Langston to Choi's attorney. Langston states, in pertinent part, "At no time prior to service on the claimed date of service of May 30, 2013 did Ms. McKillop ever do as she had said in her March 26, 2013 letter, i.e., 'We agree to notify you prior to service of process upon Ms. Young.' " Young also argued the inconsistencies in the documentation and the discrepancy between the damages award and the amount of Choi's medical bills established a prima facie defense as to damages, and she had demonstrated excusable neglect and reasonable diligence.

In opposition, Choi argued clear and convincing evidence did not rebut service of process, she had no obligation to give Young notice of the motion for entry of the default judgment, and Young did not present a prima facie defense as to damages or demonstrate due diligence or excusable neglect.

On October 22, 2013, the court entered an order granting the motion to vacate the default judgment. The court found the default judgment was entered without notice to Young after her attorney filed a notice of appearance, and Choi's damages claim was for an "amount uncertain." The court scheduled an evidentiary hearing on entry of the order of default. The court found Young presented a prima facie issue of lack of personal jurisdiction. The order states, in pertinent part:

> 1. Defendant appeared after entry of the order of default and filed a Motion to Vacate Order of Default and demonstrated a prima facie issue of lack of personal jurisdiction, due diligence and excusable neglect.
> 2. Defendant has shown that the default judgment herein was obtained by plaintiff without notice and after defendant had entered a notice of appearance.
> 3. Plaintiff's claim is for an "amount uncertain."

> IT IS HEREBY ORDERED, ADJUDGED AND DECREED that (1) the Order of Default dated June 27, 2013 will be considered at the evidentiary hearing; (2) the Default Judgment dated July 30, 2013 is hereby VACATED; and/or (3) an evidentiary hearing on service of process is set for November 15th at 1:30 pm, 2013. Plaintiff may present affidavit for attorneys' fees for default orders.

Following the evidentiary hearing on November 15, the court entered an order denying the motion to vacate the order of default. The court denied the motion to vacate the order of default as to liability but ruled Young was entitled to a trial on damages. The order states, in pertinent part:

> IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Defendant's Motion to Vacate and Set Aside the Order of Default is DENIED. The court further orders that the default as to liability stands but not as to damages and that the defendants are entitled to a hearing or jury trial on the issue of damages and causation of damages only.

On November 21, Choi filed a notice of appeal of the October 22 "Order Granting Defendant's Motion to Vacate Order and Judgment by Default Or, in the Alternative, Granting the Request for Evidentiary Hearing."[4]

Choi filed a motion for an award of attorney fees and costs. On January 3, 2014, the court entered an "Order Granting Plaintiff's Motion for an Award of Attorney's Fees and Costs." The court awarded Choi attorney fees and costs related to entry of the order of default. The court denied the request for attorney fees and costs related to the default judgment because "the default judgment was vacated." Choi filed an amended notice of appeal to designate the attorney fee order.

On January 10, 2014, Choi for the first time e-filed Plaintiff's Amended Motion for Order of Default against Defendant dated June 26, 2013, the amended declaration of Choi's attorney with exhibits dated June 26, 2013,

---

[4] Choi does not appeal the November 15 "Order Denying Motion to Vacate Order of Default."

Plaintiff's Motion for Entry of Default Judgment dated July 24, 2013, and Choi's declaration dated July 29, 2013 with the King County Superior Court Clerk.

ANALYSIS

Choi asserts the court erred in finding Young was entitled to notice of the motion for entry of the default judgment under CR 55(a)(3). Choi also asserts substantial evidence does not support the finding that Young presented a prima facie defense as to damages or that Young demonstrated excusable neglect and due diligence under CR 60(b).

A motion to vacate a default judgment is governed by CR 55 and CR 60. Morin v. Burris, 160 Wn.2d 745, 754, 161 P.3d 956 (2007). CR 55(c)(1) provides that a court may set aside an order of default for good cause and upon terms the court deems just. If a default judgment has been entered, the court may set it aside under CR 60(b). CR 55(c)(1). CR 60(b) sets out the specific grounds that warrant setting aside a default judgment, including "[m]istakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order." CR 60(b)(1). The moving party bears the burden of proof. Little v. King, 160 Wn.2d 696, 704-05, 161 P.3d 345 (2007).

We review a trial court's decision to vacate a default judgment for abuse of discretion. Little, 160 Wn.2d at 702. "An abuse of discretion exists only when no reasonable person would take the position adopted by the trial court." Little, 160 Wn.2d at 710. We review a trial court's factual findings for substantial evidence. Sunnyside Valley Irrigation Dist. v. Dickie, 149 Wn.2d 873, 879, 73 P.3d 369 (2003). Substantial evidence is the quantum of evidence sufficient to persuade a rational fair-minded person the premise is true. Sunnyside, 149 Wn.2d at 879.

Default judgments are disfavored in Washington based on an overriding policy that prefers the resolution of disputes on the merits. Griggs v. Averbeck Realty, Inc., 92 Wn.2d 576, 581, 599 P.2d 1289 (1979). A proceeding to vacate a default judgment is equitable in nature and relief is to be afforded "in accordance with equitable principles." Griggs, 92 Wn.2d at 581. In reviewing a motion to vacate a default judgment, the court's principle inquiry should be whether the default judgment is just and equitable. Little, 160 Wn.2d at 710-11. "This is not a mechanical test; whether or not a default judgment should be set aside is a matter of equity." Little, 160 Wn.2d at 704. The trial court may exercise its discretion "liberally, as well as equitably, to the end that substantial rights be preserved and justice between the parties be fairly and judiciously done." White v. Holm, 73 Wn.2d 348, 351, 438 P.2d 581 (1968).

We engage in a fact-specific inquiry to determine whether justice is being done. Griggs, 92 Wn.2d at 582. Because we do not favor default judgments, we are less likely to find that the trial court based its decision on untenable grounds when the court vacated the default judgment than when it did not. Griggs, 92 Wn.2d at 582.

CR 55(a)

Choi contends that under the plain language of CR 55(a), Young was not entitled to notice of the motion for entry of the default judgment because Young did not file a notice of appearance before Choi filed the motion for an order of default. CR 55(a) states, in pertinent part:

> (1) Motion. When a party against whom a judgment for affirmative relief is sought has failed to appear, plead, or otherwise defend as provided by these rules and that fact is made to appear by motion and affidavit, a motion for default may be made.
> (2) Pleading After Default. Any party may respond to any pleading or otherwise defend at any time before a motion for default and supporting

affidavit is filed, whether the party previously has appeared or not. If the party has appeared before the motion is filed, he may respond to the pleading or otherwise defend at any time before the hearing on the motion. If the party has not appeared before the motion is filed he may not respond to the pleading nor otherwise defend without leave of court. Any appearances for any purpose in the action shall be for all purposes under this rule 55.

(3) Notice. Any party who has appeared in the action for any purpose shall be served with a written notice of motion for default and the supporting affidavit at least 5 days before the hearing on the motion. Any party who has not appeared before the motion for default and supporting affidavit are filed is not entitled to a notice of the motion, except as provided in rule 55(f)(2)(A).[5]

Choi relies on the language of CR 55(a)(3) that states, "Any party who has not appeared before the motion for default and supporting affidavit are filed is not entitled to a notice of the motion."[6] Young contends the court did not err in finding she was entitled to notice of the motion for entry of the default judgment because the motion was not filed with the King County Superior Court Clerk until several months after the notice of appearance was filed. Choi asserts we cannot consider this argument for the first time on appeal.

As a general rule, we do not consider arguments raised for the first time on appeal. RAP 2.5(a); Clapp v. Olympic View Publ'g Co., LLC, 137 Wn. App. 470, 476, 154 P.3d 230 (2007). However where, as here, the record has been sufficiently developed to fairly consider the argument, a party may argue a ground for affirming a trial court decision that was not presented below. RAP 2.5(a); Caulfield v. Kitsap County, 108 Wn. App. 242, 250, 29 P.3d 738 (2001).

---

[5] Emphasis in original.
[6] Emphasis added.

12

Under CR 5(e), a party must file pleadings with "the clerk of the court."[7] If authorized by rule, pleadings may be filed electronically. CR 5(e). Under CR 5(e), "[f]iling occurs when the papers are filed with the clerk of the court." In re Pers. Restraint Petition of Carlstad, 150 Wn.2d 583, 592, 80 P.3d 587 (2003). "The purpose of filing is to deposit the document in a public place so that it may be seen and examined by any person interested therein." Malott v. Randall, 83 Wn.2d 259, 262, 517 P.2d 605 (1974).

King County Superior Court (KCSC) Local General Rule 30 mandates e-filing. KCSC LGR 30(b)(5) states that "attorneys shall electronically file (e-file) all documents with the Clerk using the Clerk's eFiling Application or an electronic service provider that uses the Clerk's eFiling Applications."[8]

KCSC Local Civil Rule 40.1, "Ex Parte and Probate Department," states parties must "comply with the specific process set forth in the Motions and Hearings Manual for

---

[7] CR 5(e) states, in pertinent part:

The filing of pleadings and other papers with the court as required by these rules shall be made by filing them with the clerk of the court, except that the judge may permit the papers to be filed with him or her, in which event the judge shall note thereon the filing date and forthwith transmit them to the office of the clerk. Papers may be filed by facsimile transmission if permitted elsewhere in these or other rules of court, or if authorized by the clerk of the receiving court.

[8] LGR 30(b)(5)(C) also allows parties to e-file working copies of pleadings for the judicial officer. LGR 30(b)(5)(C) states, in pertinent part:

Judges' working copies for e-filed documents may be electronically submitted to the Clerk using the Clerk's eFiling Application and pursuant to LCR 7 unless this rule provides otherwise. The Clerk may assess a fee for the electronic delivery of working copies.

submitting their paperwork." KCSC LCR 40.1(b)(5)(B).[9]

Consistent with KCSC LGR 30, The Ex PARTE MOTIONS AND HEARINGS MANUAL unequivocally directs parties to submit documents to the ex parte department only after filing with the King County Superior Court Clerk:

> In compliance with LGR 30, most documents filed by attorneys must be filed electronically. If these documents are to be subsequently presented to the Ex Parte and Probate Department via the Clerk, parties may proceed to submit documents for presentation through the Clerk's E-Filing application after filing the intended documents.

KING COUNTY, WASH., DEP'T OF JUDICIAL ADMIN., EX PARTE MOTIONS AND HEARINGS MANUAL § I, "Court Policy and Rules" (rev. July 17, 2014).[10]

The record establishes Choi's attorney did not file the amended motion for an order of default and Choi's declaration in support of the motion until January 10, 2014, months after Young's attorney filed a notice of appearance on July 17, 2013. Because Young filed a notice of appearance before the motion was filed with the King County Superior Court Clerk, she was entitled to notice of the motion for an order of default.

The record also establishes that Young demonstrated substantial compliance with the appearance requirement. In Morin, the Washington State Supreme Court

---

[9] KCSC LCR 40.1(a) states:

(1) Ex Parte and Probate Department Presentation of Motions and Hearings Manual. The Ex Parte and Probate Department and probate Presentation of Motions and Hearings Manual ("Motions and Hearings Manual") is issued by the Clerk and shall contain a list of all matters that shall be presented to the Ex Parte and Probate Department and specifically indicate which matters shall be heard in person and which shall be submitted in writing, without oral argument, through the Clerk's office. The Motions and Hearings Manual shall contain specific procedural information on how to present matters through the Clerk's office. The Motions and Hearings Manual shall be made available online at www.kingcounty.gov/courts/clerk and in paper form through the Clerk's office and the Ex Parte and Probate Department.

(Emphasis in original.)

[10] (Emphasis added.) Available at http://www.kingcounty.gov/courts/Clerk/ExParte.aspx.

addressed the doctrine of substantial compliance.

> [F]or over a century this court has applied the doctrine of substantial compliance. . . . We have not exalted form over substance but have examined the defendants' conduct to see if it was designed to and, in fact, did apprise the plaintiffs of the defendants' intent to litigate the cases. However, where we have applied the substantial compliance doctrine, the defendant's relevant conduct occurred after litigation was commenced.

Morin, 160 Wn.2d at 755. A litigant can demonstrate substantial compliance with the appearance requirement for purposes of CR 55(a)(3) if "the record clearly reflects that after [plaintiff] filed suit, [defendant] intended to litigate or settle the case." Meade v. Nelson, 174 Wn. App. 740, 749, 300 P.3d 828 (2013) (citing Morin, 160 Wn.2d at 755).

Choi argues Young cannot show substantial compliance because the "mere intent to defend" is insufficient for purposes of compliance with the appearance requirement. Contrary to Choi's argument, the record shows that after Choi filed suit, USAA "intended to litigate or settle the case." Meade, 174 Wn. App. at 749. After Choi filed the summons and complaint on March 22, 2013, USAA and Choi engaged in ongoing settlement negotiations and Choi's attorney agreed to notify USAA prior to serving Young with the summons and complaint. On May 2, Langston requested additional documentation for the work loss claim and asked Choi's attorney to "[p]lease contact USAA to present your counter offer so we may continue to move this claim forward to an amicable settlement."

On May 17, the attorney sent a letter to Langston rejecting the settlement offer. Without notice to USAA, the attorney then directed service of the summons and complaint on Young and, on June 27, obtained an order of default against Young.

On June 28, Langston sent another settlement offer to Choi's attorney. On July 11, Choi's attorney responded with a counteroffer and, for the first time, informed

15

Langston that on May 30, the summons and complaint was served on Young. Choi's attorney states that unless "the parties can reach a settlement of this claim by [July] 19, 2013, Ms. Choi will pursue all legal remedies against your insured." Sometime thereafter, Langston learned that Choi's attorney had obtained an order of default. Choi's attorney refused to vacate the order. On July 17, an attorney representing USAA filed a notice of appearance.

Because the record establishes substantial compliance with the appearance requirement, the court did not err in finding Young was entitled to notice of the motion for default.

The record also supports the trial court's decision to set aside the default judgment under CR 60(b). CR 60(b) states, in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
> (1) Mistakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order.

To vacate a default judgment under CR 60(b), the moving party must demonstrate that (1) there is substantial evidence to support a prima facie defense; (2) the failure to timely appear and answer was occasioned by mistake, inadvertence, surprise, or excusable neglect; (3) the moving party acted with due diligence after notice of entry of the default judgment; and (4) the opposing party will not suffer a substantial hardship if the trial court vacates the default judgment. White, 73 Wn.2d at 352. The first two factors above are "primary" and the latter two are "secondary." Little, 160 Wn.2d at 352.

If the moving party is able to demonstrate a strong or virtually conclusive defense, courts will generally spend little time inquiring into the reasons for the default. Akhavuz v. Moody, 178 Wn. App. 526, 533, 315 P.3d 572 (2013). If, on the other hand, the moving party is unable to show a strong defense, the reasons for default, the timeliness of the motion to vacate, and the prejudice to the opposing party will be more carefully scrutinized. Akhavuz, 178 Wn. App. at 533.

We view the evidence and reasonable inferences in the light most favorable to the moving party in determining whether there is substantial evidence of a prima facie defense. Johnson v. The Cash Store, 116 Wn. App. 833, 841, 68 P.3d 1099 (2003); Pfaff v. State Farm Mut. Auto. Ins. Co., 103 Wn. App. 829, 835, 14 P.3d 837 (2000). The trial court need determine only whether the defendant is able to demonstrate any set of circumstances that would, if believed, entitle the defendant to relief. TMT Bear Creek Shopping Ctr., Inc. v. PETCO Animal Supplies, Inc., 140 Wn. App. 191, 203, 165 P.3d 1271 (2007).

Choi contends the court erred in finding that Young "demonstrated a prima facie issue of lack of personal jurisdiction." We disagree. In support of the motion to vacate the order of default, Young argued she was not served with the summons and complaint. In support, Young submitted her own declaration and the declaration of Kester. Viewed in the light most favorable to Young, substantial evidence supports the finding that Young presented a prima facie defense of lack of personal jurisdiction that required scheduling an evidentiary hearing on service of process.

Choi also contends Young did not present a prima facie defense as to damages or show due diligence and excusable neglect. Again, we disagree. A trial court may

17

vacate a default judgment "if there [is] not substantial evidence to support the award of damages." Shepard Ambulance, Inc. v. Helsell, Fetterman, Martin, Todd & Hokanson, 95 Wn. App. 231, 242, 974 P.2d 1275 (1999).

In support of the entry of the default judgment for $134,744, Choi submitted a declaration with her medical records, her medical bills totaling $1,822, excerpts from her 2010 and 2011 tax returns, and a letter from her employer stating how many hours of work she missed.

Viewed in the light most favorable to Young, substantial evidence supports a prima facie defense as to damages. In her declaration, Choi states she began experiencing numbness in her left leg "[w]ithin a couple days of the accident" and still had numbness in her left leg. But the medical records show that by April 7, 2010, back pain and numbness in her left leg had resolved. On April 7, 2010, Dr. Patricia Lewis notes, "Initially [Choi] had some fairly sharp pains in her low back and some numbness in her left leg. That has now resolved." Choi also testified that she was "seen by Dr. Lewis on May 26, 2010, for my persistent low back pain and numbness." But according to Dr. Lewis, on May 26, 2010, Choi had "no numbness or radiation of the pain." And although Choi testified that "physical therapy treatments did not seem to help my lower back pain or eliminate the numbness in my left leg," nothing in the physical therapy records indicate she was experiencing leg numbness after May 2010.

Substantial evidence also supports finding excusable neglect and due diligence. " 'Excusable neglect' may be found if the tardy party acted diligently despite the circumstances." Puget Sound Med. Supply v. Dep't of Social & Health Servs., 156 Wn. App. 364, 376, 234 P.3d 246 (2010). Due diligence in this setting contemplates the

18

prompt filing of a motion to vacate. <u>Akhavuz,</u> 178 Wn. App. at 539. "The critical period is between when the moving party became aware of the judgment and when it filed the motion to vacate." <u>Ha v. Signal Elec., Inc.</u>, 182 Wn. App. 436, 454, 332 P.3d 991 (2014).

Substantial evidence supports the finding that Young's attorney acted with due diligence. For the first time in opposition to Defendant's Motion for an Order to Show Cause Why the Order of Default against Ashely Young Should Not Be Vacated, Choi's attorney disclosed entry of the default judgment. Within three weeks, the attorney representing USAA and Young filed a motion to vacate the default judgment.

Because the trial court did not abuse its discretion in granting the motion to vacate the default judgment, we affirm.[11]

WE CONCUR:

---

[11] Accordingly, we need not consider Choi's appeal of the Order Granting Plaintiff's Motion for an Award of Attorney's Fees and Costs.

19